CHAYA M. MANDELBAUM (SBN: 239084)
Email: dal@rezlaw.com
ERIN M. PULASKI (SBN: 270998)
Email: emp@rezlaw.com
RUDY, EXELROD, ZIEFF & LOWE, LLP
351 California Street, Suite 700
San Francisco, CA 94104
Telephone: (415) 434-9800
Facsimile: (415) 434-0513

Attorneys for Plaintiff
ANUBHAV SINGH OBEROI

JOSEPH R. LORDAN, SB# 265610
Email: joseph.lordan@lewisbrisbois.com
ROBERT I. LOCKWOOD, SB #259870
Email: robert.lockwood@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD & SMITH LLP
333 Bush Street, Suite 1100
San Francisco, CA 94104-2872
Telephone: (415) 362-2580
Facsimile: (415) 434-0882

CHARLES R. ZEH, ESQ., *Pro Hac Vice*
Email: crzeh@aol.com
THE LAW OFFICES OF CHARLES R. ZEH, ESQ.
50 West Liberty Street, Suite 950
Reno, NV 89501
Telephone: (775) 323-5700
Facsimile: (775) 786-8183

Attorneys for Defendants
AIRWIRE TECHNOLOGIES,
JON BENGTSON, and DEBASHIS BAGCHI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| ANUBHAV SINGH OBEROI,<br><br>    Plaintiff,<br><br>    vs.<br><br>AIRWIRE TECHNOLOGIES, JON BENGTSON, DEBASHIS BAGCHI, and DOES 1 through 20, inclusive,<br><br>    Defendants. | Case No. 5:20-cv-00753-EJD<br><br>**JOINT RULE 26(f) REPORT**<br><br>Date:  July 23, 2020<br>Time: 10:00 a.m.<br>Place: Courtroom 4<br>Judge: Honorable Edward J. Davila<br><br>Complaint Filed: January 31, 2020<br>Trial Date:   None Set |

Plaintiff Anubhav Singh Oberoi ("Plaintiff" or "Mr. Oberoi") and Defendants AirWire Technologies, Jon Bengtson and Debashis Bagchi ("Defendants") (collectively "the Parties") hereby submit their Joint Rule 26(f) Report and Discovery Plan pursuant to Federal Rule of Civil Procedure 26(f), the Court's Order Setting the Initial Case Management Conference, and Standing Order for All Judges of the Northern District of California Regarding Content of Joint Case Management Statements.

The Parties have considered and discussed the following matters required by Rule 26(f) and the Court's Order and the position of each party is set forth below.

## I. JURISDICTION AND SERVICE, PROCEDURAL HISTORY

On January 31, 2020, Plaintiff filed the Complaint against Defendants. The Complaint alleged causes of action for violations of the federal Fair Labor Standards Act ("FLSA) and California's Labor Code and Business and Professions Code.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states. The amount in controversy exceeds $75,000 exclusive of interest and costs.

This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff alleges claims under the FLSA, a law of the United States.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this district. Plaintiff was employed within this district.

Counsel for Defendants accepted service of the Complaint and Summons on behalf of Defendants on February 12, 2020. Defendants filed their Answer to Plaintiff's Complaint on March 31, 2020.

The parties agree that jurisdiction and venue are proper. All parties have been served.

## II. STATEMENT OF FACTS

*Plaintiff's Statement*

A.S. Oberoi joined AirWire Technologies as its Vice President of World-Wide Business Development in February of 2016. Starting in July of 2016, the company stopped paying

1
JOINT RULE 26(F) REPORT
CASE NO. 5:20-CV-00753-EJD

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

Mr. Oberoi his salary, citing financial struggles. Based on representations by the company's CEO, Debashis Bagchi, and Board Chairman and CFO, Jon Bengtson, that imminent influxes of capital would allow AirWire to pay him back soon, Mr. Oberoi continued working for the company without receiving his salary. In order to survive, Mr. Oberoi depleted his savings and drained his 401k accounts.

While the company sporadically made small payments to him, it continued to employ him without paying him his salary for almost two years. By March of 2018, the company's own payroll correspondences confirmed that Mr. Oberoi was owed almost $250,000 in accrued back pay.

In March of 2018, Mr. Bengtson circulated to Mr. Oberoi and his colleagues a memorandum that purported to retroactively notify them that the company had "ceased to accrue salary" as of December 31, 2017, despite the fact that Mr. Oberoi had continued to work for the company through the March 2018 date the memorandum was circulated.

Since March of 2018, AirWire has made almost no meaningful headway in paying off the hundreds of thousands of dollars it owes Mr. Oberoi in back wages, opting instead to use its available funds to pay significant advances to Mr. Bagchi and other officers and business investments it deems to be a higher priority.

*Defendant's Statement*

AirWire Technologies ("the Company" or "AirWire") is a small, "high-tech," Nevada start-up company that is currently designing in order to deploy an artificial intelligence based virtual assistant for use in automobiles. The product will be an "app" named Jarvis. The distinction between Jarvis and other common virtual assistants is that Jarvis is driven by cognitive artificial intelligence using IBM's Watson as its platform. Accordingly, Jarvis is intuitive. It remembers the operator's behavior in order to predict the current needs and desires of that person. The potential applications for this technology have attracted investments in the Company of over $1.5 million during Mr. Oberoi's employment. These funds were largely used to cover operating and development costs. Unfortunately, the Company was not, during the

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

relevant time period, able to bring salable products or services to market. AirWire's revenue was $2,100 in 2016, $85,500 in 2017 and $0 in 2018.

Mr. Oberoi received a letter form offer of employment from AirWire on February 9, 2016, for the position as the Vice-President of World-Wide Business Development. Mr. Oberoi executed and returned the offer letter that same day. The position provided an annual salary of $175,000 and other benefits. One of the most potentially lucrative benefits was the Company Stock Option Plan. This plan allowed executives, like Mr. Oberoi, the option to purchase 500,000 shares of the Company's common stock at $1.00 per share. The stock options vest over five years, at the rate of approximately 20% per year. Vesting ceases upon termination of employment, giving, however, participating employees the option of purchasing the shares that vested, to-date, within 30 days of leaving the Company, or lose the option to acquire the vested shares, altogether. This provision was intended to incentivize employees to remain with the Company.

Plaintiff's duties were to develop customers for the Company's products and/or services primarily from South Asia. He traveled to the region on Company business. Further, he attended international trade shows with other Company executives. When not traveling abroad, Mr. Oberoi constantly communicated with potential clients overseas. Conversely, almost none of his time was spent with customers or suppliers in the United States. Further, Mr. Oberoi was charged with attempting to locate investors, most of which were located on the Indian subcontinent.

Plaintiff regularly received bi-monthly payments of salary from March through June of 2016, for a total gross income of $68,939.43. In July of that year, the Company encountered a critical shortage of capital which caused the Company to cease the payment of salaries to all of its executives and officers. Like other corporate officers, Mr. Oberoi was told that he had the option of leaving the Company and seeking employment elsewhere, in which case, Mr. Oberoi had to purchase his vested shares of stock in the Company within 30 days of separation from employment to avoid losing the option. Or Mr. Oberoi could choose to stay with the Company, without regular compensation, but while continuing to accrue vested shares in the Company

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

pursuant to the Company's stock option plan. Like other corporate officers, Mr. Oberoi was told that if he stayed, the Company would advance him funds, consistent with the cash flow needs of the Company and Mr. Oberoi's need for funds to survive, until the Company raised adequate capital or became a going concern and able to pay Mr. Oberoi his back wages, which payment would be deferred until one or both of these conditions had been met. This was also the Company's attempt to keep the team of executives together to further the Company's quest to become a profitable, going concern.

Faced with this Hobson's choice, Mr. Oberoi took the stock option path and elected to remain at work with the Company, accept advances and agree to defer payment on his salary. In fact, he received cash advances from July 2016, on a reasonably regular basis. These advances continued even after he stopped performing and essentially quit the Company in March of 2018. For the period of October 2016 through February 2018, Mr. Oberoi received 19 advances totaling $57,264.00.

Then, after Mr. Oberoi left the Company, these payments continued, though he was doing no work. From April 2018, through September 2018, Mr. Oberoi received seven more installments amounting to $22,000. Thus, for the period of October 2016 through September 2018, Mr. Oberoi was paid advances amounting to $79,264.

The advances picked up again in January 2019, through August 2019. During this period, the Company made nine advances of $3,000 each, totaling another $27,000. Payments ceased as of August 2019. Over the period of July 2016 through August 2019, Mr. Oberoi, therefore, received advances of $106,243, for a period of 38 months. These cash advances are to be repaid, as an eventual offset against the wages now owed, but not yet due.

During the time Mr. Oberoi worked for the Company, a period of 24 months from February of 2016 through February 2018, when he just stopped performing, he was paid in salary or advances the sum of $126,203.43, that is $68,939.43 at $14,583 per month, plus $57,264 in advances. This amortizes out at the rate of $5,258.48 per month or $63,101.72 per year. Under the FLSA, an exempt administrative employee need only earn $23,660 ($455/week times

52 weeks) in one year. Mr. Oberoi also received payments virtually every month from February 2016 through February 2018, when he walked away from the Company.

Debashis Bagchi (Bagchi) and Jon Bengtson (Bengtson) are the CEO and CFO of the Company, respectively. Mr. Oberoi pursues Bagchi and Bengtson under the FLSA as statutory employers. This is not a good fit, however. Bengtson and Bagchi, like all of the Company's executives, ceased to receive their salaries in June of 2016. Further, Bengtson and Mr. Oberoi were equals in the corporate hierarchy, with the same salary and benefits.

## III. **LEGAL ISSUES**

The Parties agree that this case does not appear to raise novel or unresolved issues of law and will likely be resolved be the determination of disputed facts.

*Plaintiff's Position*

Plaintiff asserts that the key legal issues currently include the following: whether and in what amount Plaintiff is owed unpaid wages and damages flowing therefrom such as liquidated damages, interest, waiting time penalties and attorney's fees; whether Plaintiff was misclassified either on account of Defendants' failure to meet the salary basis test associated with any exemptions or on account of job duties; and whether the individual defendants are liable as employers of Plaintiff.

*Defendant's Position*

The defendants assert the following legal issues:

(1) Whether this is, in reality, an alleged breach of contract or oral contract or *quantum meruit* case, to which the current FLSA and California Labor Code claims do not apply;

(2) Whether Mr. Oberoi was, at all relevant times, exempt under the FLSA and California Labor code as a result of his high salary, sales and administrative functions;

(3) Whether the company is an employer subject to the FLSA and California Labor Code as the result of its minimal income for the relevant time period;

(4) Whether Defendant Bengtson is a statutory employer under the FLSA and/or California Labor Code;

///

(5) Whether Defendant Bagchi is a statutory employer under the FLSA and/or California Labor Code;

(6) Whether Plaintiff was in fact paid sufficient wages under the FLSA and California Labor Code;

(7) If Plaintiff is determined to be a covered employee under the FLSA and/or California Labor Code, whether the Company is allowed to deduct the time spent on international travel and working with international contacts from the amount of wages owed;

(8) Whether the defendants are allowed an offset in the approximate amount of $170,000;

(9) Whether Plaintiff modified the terms of his employment contract through his consent to non-payment;

(10) Whether Plaintiff's employment contract was modified to add a condition precedent;

(11) If Plaintiff was at any relevant time not properly classified as exempt under the FLSA and/or California Labor Code, whether Plaintiff worked enough hours in a workweek or workday to be entitled to overtime;

(12) Whether Plaintiff is entitled to liquidated damages if the Company reasonably believed he was a highly salaried, exempt employee of the Company;

(13) Whether Plaintiff is entitled to liquidated damages from Defendant Bengtson, as Defendant Bengtson reasonably believed he was not a statutory employer of Oberoi and he reasonably believed that Plaintiff was a highly salaried, exempt employee of the Company;

(14) Whether Plaintiff is entitled to liquidated damages from Defendant Bagchi, as Defendant Bagchi reasonably believed he was not a statutory employer of Plaintiff and he reasonably believed that Plaintiff was a highly salaried, exempt employee of the Company;

(15) Whether Plaintiff is a highly salaried Vice President of the Company, and therefor not entitled to the protection of the FLSA and the California Labor Code.

(16) Whether Defendants conduct was not willful, such that the appropriate statute of limitations for Plaintiff's FLSA claims is two years instead of three.

///

///

## IV. MOTIONS

The Parties have yet to file any motions. The Parties may file motions for summary judgment or adjudication, and motions to compel discovery, as necessary, if good faith meet and confer is unable to resolve any discovery issues that arise.

## V. AMENDMENT OF PLEADINGS

The Parties do not presently anticipate amending the pleadings but will be better positioned to evaluate any necessary amendments after initial rounds of discovery have been completed. The Parties propose December 1, 2020 as the deadline to amend the pleadings.

## VI. EVIDENCE PRESERVATION

The Parties have reviewed the ESI Guidelines, have met and conferred regarding their obligations to preserve evidence, and have taken the steps necessary to preserve the information in their possession.

## VII. DISCLOSURES

The Parties do not believe that the Court's Pilot Program for Initial Discovery Protocols applies to this case. The Parties exchanged initial disclosures pursuant to FRCP 26(a) on July 10, 2020.

## VIII. DISCOVERY

The Parties have exchanged initial disclosures pursuant to FRCP 26(a) and will proceed with written discovery in the coming weeks. The Parties do not anticipate that additional discovery beyond that provided by the Federal Rules will be necessary. The Parties agree that service by email for all discovery is mutually agreeable, except where file size or other issues prevent it. The Parties have not considered a stipulated e-discovery order but have considered a stipulated protective order. The Parties are not currently aware of any existing discovery disputes.

## IX. CLASS ACTIONS

Not applicable.

## X. RELATED CASES

None.

## XI. RELIEF

*Plaintiff's Position*

Plaintiff seeks all relief as allowed by law including unpaid wages, liquidated damages, interest, waiting time penalties, attorney's fees and costs, restitution and such other relief as the court deems just and proper. As of the filing of the Complaint, the failures to pay Plaintiff his agreed upon salary, along with waiting time penalties and interest exceeds $300,000, even after accounting for the minimal installment payments Defendants provided sporadically. Factoring in liquidated damages, overtime premiums and attorney's fees, the monetary damages were approximately $400,000 at the time of filing the Complaint. The damages have continued to accrue since the filing of the Complaint in the forms of prejudgment interest and the expenditure of attorneys' fees and costs.

*Defendants' Position*

Defendants deny that Plaintiff has sustained any injury, damage, or loss, if any, by reason of any act or omission of Defendants or its agents or employees. To the extent that attorney's fees and costs are available, Defendants' will seek that relief.

## XII. SETTLEMENT AND ADR

The Parties have complied with ADR L.R. 3-5 and agree to pursue settlement through a private mediation/settlement conference with a magistrate judge following written discovery exchange and a few key depositions. The Parties propose a deadline of 120 days from the Case Management Conference within which to complete the mediation/settlement conference.

## XIII. CONSENT TO MAGISTRATE JUDGE

Not all Parties agreed to proceed before a magistrate judge.

## XIV. OTHER REFERENCES

None.

## XV. NARROWING OF ISSUES

After completion of initial rounds of discovery, the Parties will be in a position to discuss possible narrowing of the issues.

///

## XVI. EXPEDITED TRIAL PROCEDURE

Not applicable.

## XVII. SCHEDULING

The Parties propose the following scheduling:

| Trial | May 25, 2021 |
|---|---|
| Pretrial Conference | May 13, 2021 |
| Hearing of Dispositive Motions | April 29, 2021 |
| Dispositive Motions filed by | March 19, 2021 |
| Non-expert Discovery Cut-off | January 8, 2021 |
| Designation of Experts | January 21, 2021 |
| Rebuttal Expert Designation | February 19, 2021 |
| Expert Discovery Cut-off | March 5, 2021 |

## XVIII. TRIAL

Plaintiff has demanded a jury trial. The Parties estimate six court days for trial.

## XIX. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

The Parties have filed "Certification of Interested Entities or Persons" and do not have any persons to identify other than the Parties in this case.

## XX. PROFESSIONAL CONDUCT

All attorneys of record for the parties have reviewed and will abide by the Guidelines for Professional Conduct for the Northern District of California.

## XXI. OTHER MATTERS

Not presently applicable.

DATED: July 13, 2020

Respectfully submitted,

RUDY, EXELROD, ZIEFF & LOWE, LLP

By: */s/ Chaya M. Mandelbaum*
CHAYA M. MANDELBAUM
*Attorneys for Plaintiff*
ANUBHAV SINGH OBEROI

| | | |
|---|---|---|
| 1 | DATED: July 13, 2020 | LEWIS BRISBOIS BISGAARD & SMITH LLP |
| 2 | | |
| 3 | | By: */s/ Robert I. Lockwood* |
| 4 | | JOSEPH R. LORDAN<br>ROBERT I. LOCKWOOD |
| 5 | DATED: July 13, 2020 | THE LAW OFFICES OF CHARLES R. ZEH, ESQ. |
| 6 | | |
| 7 | | By: */s/ Charles R. Zeh* |
| 8 | | CHARLES R. ZEH<br>*Attorneys for Defendants* |
| 9 | | AIRWIRE TECHNOLOGIES,<br>JON BENGTSON, and DEBASHIS BAGCHI |

**ECF ATTESTATION**

Pursuant to Civil L.R. 5-1(i)(3), the filer attests that concurrence in the filing of this document has been obtained from each of the other signatories thereto.

Executed this 13th day of July 2020, at San Francisco, California.

 */s/ Chaya M. Mandelbaum*
CHAYA M. MANDELBAUM